D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEREK CANTON,

                       Plaintiff,

-against-

MICHAEL ASTRUE *as Commissioner of Social Security*,

                       Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-3038 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Derek Canton ("Canton") brings this action under 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration's ("SSA's") denial of his claim for disability insurance benefits ("DIB"). (Compl. (Docket Entry # 1).) The Commissioner moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Def.'s Mot. (Docket Entry # 11).) As set forth below, the court denies the Commissioner's motion and remands the proceedings to the Commissioner.

**I.    STANDARD OF REVIEW**

**A.    Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in

favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II. BACKGROUND

Canton was born on February 23, 1962. (Administrative Transcript ("Tr.") (Docket Entry # 8) at 51.) On April 23, 2004, Canton filed a claim for DIB, alleging a disability onset date of December 25, 2002. (Id. at 51-53.) After the SSA denied his claim, Canton requested a

hearing before an Administrative Law Judge ("ALJ"). (Id. at 40-43.) On March 13, 2006, ALJ Hazel C. Strauss held a hearing regarding Canton's claim. (Id. at 340-415.) The ALJ issued an unfavorable decision on October 13, 2006. (Id. at 13-24.) Canton then sought review before the SSA Appeals Council, which denied his request for review on May 30, 2008. (Id. at 4-8.) By operation of 42 U.S.C. § 405(g), this became the final judgment of the Commissioner. Canton timely filed his Complaint on July 25, 2008. See 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Standard of Review for Determining Disability

To determine whether a claimant is entitled to DIB, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995).

### B. The ALJ's Decision

#### 1. Steps One, Two, and Three

Under step one of the analysis, the ALJ found that Canton did not engage in substantial gainful activity during his alleged disability period. (Tr. at 18.) Under step two, the ALJ found that Canton suffered from the following severe medical impairments: lumbar disc disease, cervical disc disease, and partial right foot drop. (Id. at 18-20.) And under step three, the ALJ concluded that none of Canton's medically severe impairments met or exceeded the Listing of Impairments. (Id. at 20.) Neither the Commissioner nor Canton dispute any of these findings.

#### 2. Step Four

Under step four, the ALJ found that Canton possessed residual functional capacity sufficient to "perform a range of sedentary work." (Tr. at 20-22.) The ALJ also found, however, that Canton was not able to perform his past occupations as file clerk, mail handler, machine operator, security guard, security guard supervisor, or census supervisor. (Id. at 22.) In his Opposition, Canton argues that the ALJ's decision should be reversed because she did not properly apply the treating physician rule, did not take into account Canton's subjective complaints of pain, and did not base her decision on substantial evidence, generally. (Pl.'s Opp'n (Docket Entry # 12) at 3-9.)

##### a. *The Treating Physician Rule*

The treating physician rule requires an ALJ to give a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

4

[the] case record." 20 C.F.R. § 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). But, where other medical opinions in the record contradict the treating physician's opinion, an ALJ need not give the treating physician's opinion controlling weight. (Id.)

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. 20 C.F.R. § 404.1527(d)(2). An ALJ must assess the length, nature, and extent of the treatment relationship; the "supportability" of the medical opinion; the consistency of the opinion with other evidence in the record; the treating physician's specialization, if any; and any other factors the claimant may bring to an ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While an ALJ need not recite each one of these factors by rote, it must be clear from her decision that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In any event, an ALJ must provide "good reasons" for the lack of weight given to the treating physician's opinion. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

Under this rubric, Canton argues that the ALJ should have afforded controlling weight to the opinions of Dr. Peter H. Hollis, Dr. E.B. Balinberg, Dr. Mitchell Levine, Dr. Sawat

Losopunkul, and Dr. Asha Haldea, all of whom, he argues, deemed him physically disabled and unable to work. (Pl.'s Opp'n at 7.)

### i. Dr. Hollis's Opinion

The ALJ did not commit legal error when she considered the opinions of Dr. Hollis. The ALJ's decision detailed Dr. Hollis's opinions throughout his relationship with Canton, beginning with a July 5, 2005 neurosurgical evaluation, followed by cervical spine surgery ten days later, on July 15, 2005. (Tr. at 19.) Nothing in Dr. Hollis's pre- or immediately post-surgery examinations indicated that Dr. Hollis believed that Canton was physically disabled and unable to work, and the ALJ appears to have given controlling weight to those conclusions. (Id.) The ALJ also noted Dr. Hollis's opinion a month after Canton's surgery, "stating that [Canton] was essentially asymptomatic and his wound was healed" but that Canton was "unable to work at that present time." (Id.) Again, the ALJ appears to have given this opinion controlling weight. (Id. at 21.) Although the ALJ believed that Canton was indeed unable to work immediately following his surgery, she found that because "[Canton] did not repeat this [to Dr. Hollis] thereafter ... the limitation was only for the short time immediately following the surgery." (Id.) As defined by statute, this "short-term disability" is not a "disability" for DIB purposes. See 42 U.S.C. § 423(d)(1)(A) (defining "disability" as a "physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months"). Lastly, the ALJ noted a later follow-up that "stated that claimant was doing 'quite nicely.' " (Id. at 20.) Contrary to Canton's contention, nothing in the ALJ's decision indicated that she afforded any of these opinions less than controlling weight.

### ii. Dr. Balinberg's Opinion

Dr. Balinberg's opinion is not afforded deference under the treating physician rule. As its name suggests, the "treating physician rule" applies only to treating physicians. A treating

6

physician is defined as a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (quoting Schisler v. Sullivan, 3 F.3d 563, 569 (2d Cir. 1993)) (internal quotation marks omitted). A review of the Administrative Transcript reveals that Dr. Balinberg saw Canton only once, for a June 29, 2004, medical exam – over a year before Canton had allegedly debilitating spine surgery – and did not have a further, ongoing relationship with him. (Id. at 131-38.) Dr. Balinberg was therefore not a "treating physician" under the treating physician rule. Consequently, the ALJ did not fall afoul of the treating physician rule when she described Dr. Balinberg as a "consultant," and concluded that Dr. Balinberg's opinion stating that Canton "had 'limited' functional abilities . . . too vague to have any weight." (Tr. at 22.)

### iii. Dr. Losoponkul's and Dr. Levine's Opinions

Similarly, nothing in the ALJ's decision suggests that she afforded the opinions of Dr. Losoponkul and Dr. Levine less than controlling weight. In analyzing the opinions of Dr. Losoponkul, an internist, the ALJ gave controlling weight to the doctor's opinions that Canton complained of a tingling sensation; that his neck had a limited range of motion; that his urine microalbumin was high; and that Dr. Losoponkul could not rule out carpal tunnel syndrome. (Tr. at 20.) And in analyzing the opinions of Dr. Levine, the ALJ noted Dr. Levine's opinion that he did not even think Canton required surgery. (Id. at 19.) No opinion, by either doctor, concluded that Canton was physically disabled and unable to work for any length of time. In any event, the ALJ did not discount the opinions of either physician in any way.

### iv. Dr. Haldea's Opinion

In her decision, the ALJ did not discuss any of Dr. Haldea's opinions concerning Canton. Indeed, in the *hundreds* of pages of medical records provided to the ALJ, only *eight* were

7

medical opinions, most of which were handwritten utterly illegibly by Dr. Haldea. (Tr. at 155-162.) Indeed, the issue of Dr. Haldea's poor penmanship came up in Canton's administrative hearing. Noting that she could not read any of Dr. Haldea's records, Canton's counsel informed the ALJ that he would provide transcribed copies of Dr. Haldea's notes within a week. (Tr. at 374-75.) It is unclear from the Administrative Transcript whether these were ever provided to the ALJ. Nonetheless, the Commissioner's own regulations command that he will "evaluate *every* medical opinion we receive." 20 C.F.R. § 404.1527(d) (emphasis added). Failure to consider even a single medical opinion – irrespective of the substantial weight of controverting evidence or a medical opinion's legibility – constitutes reversible error. See Berman v. Comm'r of Soc. Sec., No. 06-CV-1186 (FB), 2007 WL 2178073, at *1-2 (E.D.N.Y. July 25, 2007); Jones v. Barnhart, No. 02-cv-0791(SHS), 2003 WL 941722, at *12 (S.D.N.Y. Mar. 7, 2003). Therefore, the court will remand the proceedings to the Commissioner to assess Dr. Haldea's opinion as best he can.

b. *Subjective Complaints of Pain*

To assess a claimant's allegations concerning the severity of her disabilities under step four, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (internal quotation marks omitted) (citing 20 C.F.R. § 404.1529(a)). If an ALJ finds that the claimant's testimony is not consistent with the medical evidence of record, the ALJ must weigh the credibility of the claimant's testimony in light of:

8

> (1) the claimant's daily activities;
>
> (2) the location, duration, frequency, and intensity of the pain;
>
> (3) precipitating and aggravating factors;
>
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>
> (5) any treatment, other than medication, that the claimant has received;
>
> (6) any other measures that the claimant employs to relieve the pain; and
>
> (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

In her opinion, the ALJ found that Canton's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 21.) The ALJ cataloged numerous instances where Canton delayed reporting or failed to report alleged symptoms to his physicians, gave testimony that contradicted his own claims, and received medical examinations that belied his alleged ailments. (Id. at 21-22.) The ALJ also mentioned that Canton "testified that he received Unemployment Insurance from December 25, 2002 through June 23, 2003, [knowing] that he was informing the Unemployment Insurance office that he was ready, willing and able to work." (Id. at 21.) "This," the ALJ noted, "is totally inconsistent with his claim of disability and further diminishes his credibility." (Id.)

In her decision to discount Canton's subjective complaints of pain, the ALJ addressed most of the factors enumerated in 20 C.F.R. § 404.1529(c)(3). The ALJ detailed Canton's daily activities, such as cooking, attending church, visiting relatives, and caring for himself, and listed

his complaints about the location, duration, frequency, and intensity of his pain. (Id. at 21.) The ALJ also took into account medications Canton took to alleviate his pain: Neurotonin and Lidoderm. (Id.) Nothing in the record indicated any alternative treatment, measures, or factors Canton employed to alleviate his pain. The ALJ, however, did not take into account any precipitating and aggravating factors, such as Canton's diabetes. On remand, the ALJ should take these factors into account when calculating Canton's residual functional capacity.

### c. *Substantial Evidence*

Canton also argues that the ALJ failed to base her decision on substantial evidence. (Pl.'s Opp'n at 3-6.) Canton's argument in sum: "It is illogical to conclude that a person who, as the ALJ agreed, has the residual capacity to sit in a chair for short periods of time can actually find, and keep, a job in the labor market." This, of course, is not the standard for "substantial evidence." Substantial evidence simply means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran, 569 F.3d at 112. Suffice it to say that the hundreds of pages of medical reports the ALJ relied on in coming to her decision was more than a mere scintilla, and enough, relevant evidence that a reasonable mind might accept to come to the same conclusions. Canton's argument fails.

### 3. Step Five

Under step five, an ALJ must determine whether the claimant, given his medically severe impairments, age, education, and skill level, can perform jobs that exist in the national economy. To assess this, an ALJ may rely on the testimony of a vocational expert ("VE"). Social Security Ruling 00-4p. The evidence presented to a VE of a claimant's limitations must "accurately reflect the limitations and capabilities of the claimant involved." Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009). The evidence "need not frame the claimant's impairments in the

specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments." Id. at 277 (quoting England v. Astrue, 490 F.3d 1017, 1023 (8th Cir. 2007)).

Under step five, the ALJ concluded Canton would be able to work as either a surveillance system monitor, a telemarketer, or an information aide. (Tr. at 23.) The ALJ relied on the testimony of a VE, who opined that even if Canton were limited to "walking a ½ block at a time, standing ½ to ¾ of an hour at a time, sitting ½ to 1 hour at a time in accord with the claimant's testimony, and if the individual could not perform fine movements with his right dominant hand," he could nonetheless perform those jobs. (Id.) The VE relied on the Dictionary of Occupational Titles (the "DOT") to make this assessment, as is proper under Social Security Ruling 00-4p.

Canton argues that the ALJ committed legal error in her determination that he was capable of working as a surveillance system monitor, a telemarketer, or an information aide, because the DOT lists each of those jobs as requiring more manual dexterity than Canton possesses. (Pl.'s Opp'n at 10-12.) As proof, Canton cites to various provisions from the DOT listing these occupations as requiring "bilateral manual dexterity," such as keyboard use, button pushing, and adjusting controls. (Id. at 11); see also Dictionary of Occupational Titles §§ 299.357-014, 379.367-010, 237.367-042 (hereinafter "DOT").

None of the manual dexterity requirements for these jobs, however, suggest *bilateral* manual dexterity. Indeed, all of the manual dexterity requirements for these jobs were listed at a Level 4, or the lowest one-third percentile, excluding the bottom ten percent. See DOT §§ 299.357-014, 379.367-010, 237.367-042. Where both hands are required to perform a listed job, the DOT has not been shy in saying so. See, e.g., DOT §§ 525.684-022 (crab butcher),

774.381-010 (clay thrower), 953.367-014 (gas-meter checker). Further, Canton testified that he had *some* use of his right hand and full use of his left. (Tr. at 382-83.) The ALJ, therefore, did not commit legal error in using the DOT or the VE's testimony to determine that Canton is able to perform jobs that exist in the national economy, and based her decision on substantial evidence.

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings is DENIED. The court remands proceedings to the Commissioner to assess the opinion of Dr. Haldea and to consider any of Plaintiff's aggravating or precipitating factors under step four. If the Commissioner finds that Plaintiff possesses the same residual functional capacity in light of these new assessments, the Commissioner may find Plaintiff to be not disabled for purposes of receiving DIB. Otherwise, the Commissioner should re-perform step five of the analysis.

SO ORDERED.

Dated: Brooklyn, New York
December 22, 2010

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge